CITY OF TYLER V. MRS. CLARA BELLE INGRAM.

No. 7953. Decided July 22, 1942.
Rehearing overruled October 7, 1942.
(164 S. W., 2d Series, 516.)

*Troy Smith,* of Tyler, for petitioner.

This case should be reversed because of the erroneous holding that the city was liable for injuries caused by defects in a structure built and used by a private corporation on land belonging to the city from which the private corporation had excluded all persons except those paying an admission fee to it. Christopher v. City of El Paso, 98 S. W. (2d) 394; City of Menard v. Coats, 60 S. W. (2d) 831; City of San Antonio v. Ashton, 135 S. W. 757; 31 Tex. Jur. 443.

*Nat. Genry, Jr.,* of Tyler, *Jones & Jones* and *Franklin Jones,* all of Marshall, for respondents.

The city had the non-delegable duty of controlling and managing its city park, and is liable in damages to an invitee thereto, who receives injuries from a nuisance, which the city knowingly permtited to remain thereon to the injury of the public. City of Waco v. Branch, 117 Texas 394, 5 S. W. (2d) 498; City of Ft. Worth v. Davidson, 117 Texas 89, 296 S. W. 288; Look v. El Paso Union Passenger Depot Co., 228 S. W. 917; 31 Tex. Jur. 1333.

MR. JUSTICE SHARP delivered the opinion of the Court.

This suit was brought by Mrs. Clara Belle Ingram against the City of Tyler, to recover damages for injuries sustained by her as a result of the collapse of a section of temporary bleachers, in which she was sitting during a pageant conducted by the Texas Rose Festival Association, a private corporation. Based upon the answers of the jury to special issues, the trial court rendered judgment for plaintiff against the City of Tyler for $18,456.00; which judgment was affirmed by the Court of Civil Appeals, 157 S. W. (2d) 184. A writ of error was granted.

The controlling question presented here is whether the City of Tyler was liable for damages for injuries received by plaintiff, such injuries having been caused by the collapse of a section of bleachers, which bleachers had been erected by the Texas Rose Festival Association in Bergfeld Park in the City of Tyler, and said City having expressly or impliedly acquiesced in the use of part of said park by the said Texas Rose Festival Association, a private corporation over which the City of Tyler had no control, for the purpose of staging a pageant and advertising the rose industry.

Plaintiff alleged that the City sponsored and promoted the Texas Rose Festival Association; that the pageant was staged on property owned by the City with its implied consent and acquiescence; that the public was expressly or impliedly invited by the City to make use of the bleachers; that the staging of the pageant was calculated to, and did, benefit the City, through increased trade, raising of property values, etc.; that the bleachers which caused the injuries were negligently erected on unlevel ground, with insufficient braces and improper foundations, all with the knowledge or implied knowledge of the City; that with such knowledge the City negligently and carelessly permitted the bleachers to be erected and remain on such unlevel foundations, and in such dangerous condition, notwithstanding the provisions of its building code against unsafe structures, and notwithstanding the fact that the same constituted a nuisance, which the City should have abated; that the City had the non-delegable duty of keeping the public park, including the bleachers erected therein, in a reasonably safe condition for use by the public, and that it negligently failed in this duty.

Defendant answered by general demurrer, general denial, and by special exceptions, and also specifically pleaded that it

had no connection with the Texas Rose Festival Association. It denied the alleged partnership or joint adventure relations, but pleaded that if such relations existed same were ultra vires.

In response to special issues submitted to it, the jury found that the location of the bleachers, and the manner in which they were constructed on the ground as they then existed, made them essentially dangerous for use by the public, and that the City, through its agents and employees, knew of such dangerous condition in time, so that, by the exercise of ordinary care, it could have prevented the use of the bleachers in such condition; that such dangerous condition was a proximate cause of the injuries to plaintiff; that the City, through, its agents, failed to exercise ordinary care to prevent the bleachers from being used by the public, which was a proximate cause of plaintiff's injuries; that the building inspector of the city was acting in his official capacity when he inspected the bleachers; that the City did not relinquish complete control and management of that section of Bergfeld Park in which the bleachers were erected to the Texas Rose Festival Association; and that the employees of the Association erected the bleachers with the aid and assistance of the City.

It is undisputed that in September, 1938, the Texas Rose Festival Association, a private corporation, engaged in promoting the rose industry in East Texas, took charge of a part of one of the City of Tyler's public parks, having a permanent amphitheater therein, and fenced it with a wire and canvas fence about seven feet high, so as to exclude all persons therefrom, except those obtaining a pass or ticket from the Rose Festival Association; that the Rose Festival Association erected temporary bleachers within the enclosure, and staged a pageant in such enclosure. On the night of the pageant one section of the bleachers fell and injured Mrs. Clara Belle Ingram, one of the paying guests.

It is also undisputed that the City owned the land used by the Rose Festival Association, and that it did not grant any permit to such Association to enclose and use the land or build the bleachers thereon and exclude the public from that part of the park, although the chairman of the city commission, the city manager, the building inspector, and one or two other minor officials knew of the use of the property and the existence of the bleachers; that the City of Tyler made no contribution to and received no consideration from the Texas

Rose Festival, or anyone else, for the use of its property; that all of the cost of erecting and building the bleachers was paid for by the Texas Rose Festival Association.

It is also undisputed that the City had a building code, but same contained no specific provision with reference to the construction of bleachers; that on the afternoon preceding the night when the section of the bleachers collapsed, the building inspector of the City, who was also its fire marshal, was called to the park because of a fire; that no request was made for an inspection of the bleachers, but that when passing same the building inspector made an observation to the effect that some of the seat boards were defective; that he also called the office of the manager of the Rose Festival and advised that the seat boards should be changed; that later in the afternoon the crew of workmen of the Rose Festival changed the seat boards, and made some corrections in other parts of the bleachers, but that the building inspector left before the work was completed.

Plaintiff did not make the Texas Rose Festival a party to this suit. The City of Tyler urged many exceptions to the petition of plaintiff, on the ground that under the facts alleged an action did not lie against the City of Tyler. All the exceptions urged by the City of Tyler were overruled. On the trial of the case the City of Tyler asked for an instructed verdict, which was overruled. After the verdict of the jury the City prayed for judgment non obstante veredicto, which was also overruled.

Petitioner contends that, in view of the undisputed evidence, the judgment in favor of respondent can not be sustained. On the other hand, respondent contends, among other things, that the judgment of the trial court can be sustained on the ground that the agents of the City were negligent in not having the bleachers built so as to be safe.

The undisputed evidence shows that the Texas Rose Festival Association took charge of the land, and built the bleachers thereon, and enclosed same so as to exclude the general public, therefrom until they paid an admission fee. It is also undisputed that the section of the bleachers which fell and injured Mrs. Clara Belle Ingram was not on the premises when the Association took charge; that the bleachers were built, main-

tained, and used solely by the Texas Rose Festival Association; and that while such land was enclosed it was no part of the public park.

■ A municipal corporation functions in a dual capacity. At times it functions as a private corporation, and at other times it functions as an arm of the government. Therefore its liability or nonliability rests upon the following two rules:

1. When a municipal corporation acts in its private capacity, for the benefit only of those within its corporate limits, and not as an arm of the government, it is liable for the negligence of its representatives. Scroggins v. City of Harlingen, 131 Texas 237, 112 S. W. (2d) 1035; City of Waco v. Branch et al, 117 Texas 394, 5 S. W. (2d) 498, Id., Texas Civ. App., 8 S. W. (2d) 271; City of Amarillo v. Ware, 120 Texas 456, 40 S. W. (2d) 57; City of Galveston v. Posnainsky, 62 Texas 118, 50 Am. Rep. 517; 30 Tex. Jur., p. 542, sec. 299; 6 McQuillan on Municipal Corporations (2d ed.), p. 1058,. sec. 2796.

2. A municipal corporation is not liable for the negligence of its agents and employees in the performance of purely governmental matters solely for the public benefit. Scroggins v. City of Harlingen, supra; City of Dallas v. Smith, 130 Texas 225, 107 S. W. (2d) 872; Gartman v. City of McAllen, 130 Texas 237, 107 S. W. (2d) 879; City of Fort Worth v. Wiggins (Com. App.), 5 S. W. (2d) 761; City of Amarillo v. Ware, supra; City of Galveston v. Posnainsky, supra; Trenton v. New Jersey, 262 U. S. 182, 43 S. Ct. 534, 67 L. Ed. 937, 29 A. L. R. 1471; 30 Tex. Jur., p. 523, sec. 289; 6 McQuillin on Municipal Corporations (2d ed.), pp. 1044 and 1058, sects. 2793 and 2796.

■ The testimony shows that the City building inspector viewed the bleachers and made some suggestions with reference to some changes that ought to be made. The City performed no other act in connection with the bleachers. The supervision of the construction, maintenance, and repair of buildings falls within the scope of the police power which is inherent in the State. This power may be delegated by the State to a municipal corporation, and such power when delegated comes within the police power of a city. City of Dallas v. Smith, 130 Texas 225, 107 S. W. (2d) 872; White v. City of San Antonio, 94 Texas 313,· 60 S. W. 426. The rule is expressed in McQuillin on Municipal Corporations (2d ed.), Vol. 3, p. 282, sec. 1016, as follows:

"The supervision of the construction, maintenance, and repair of buildings and like structures fall strictly within the scope of the police power, which, under our system of government and law, is inherent in the state, and the power to enact and enforce all reasonable and necessary regulations appertaining thereto may be vested by the state in whole or in part in the municipal corporation, and may be, and is changed from time to time."

■ A municipality is not liable for the negligence of a building inspector in the performance of his duties; because such duties are governmental functions. McQuillin on Municipal Corporations, Vol. 6, p. 1172, sec. 2842; Valenti v. Mosholu Housing Corporation, 299 N. Y. S. 590; Stubley v. Allison Realty Co., 124 App. Div. 162, 108 N. Y. S. 759; Lindemann v. Kenosha, 206 Wis. 364, 240 N. W. 373.

It is also contended that the City is liable because it knowingly acquiesced in and permitted the erection of the dangerous bleachers in its park by the Association, and knowingly acquiesced in the invitation extended to the public to use the dangerous bleachers that the City allowed to be erected on its property.

■ From the facts and circumstances developed in this case for the purpose of determining the liability of the City for the acts of negligence of the Texas Rose Festival Association, the City should be treated as a lessor of the land enclosed by the Association.

In 27 Tex. Jur., p. 47, sec. 3, it is said:

"An occupant of real estate may be found to have been the tenant of the owner of the property although there appears to have been no express contract between them either written or oral, and although the occupant may not have agreed or become obligated to pay rental or other consideration."

We also quote from the American Law Institute's Restatement of the Law of Torts, Vol. 2, p. 966, the following:

"Except as stated in Sections 357 and 362, a lessor of land is not subject to liability for bodily harm caused to his lessee or others upon the land with the consent of the lessee or sub-

lessee by any dangerous condition which comes into existence after the lessee has taken possession.

"Comment:

"a. The words 'lessor of land' denote one who has leased land for a definite or indefinite period, no matter how great or small, by a written or parol lease, irrespective of whether a statute of fraud requires the lease to be in writing. The lease may be created by words or other conduct expressing consent to the lessee's possession. The conduct expressing consent may consist merely in a failure to terminate a lease or eject the tenant or to object to the presence of one who has entered without the lessor's consent but not adversely to him.

"b. The rule stated in this section includes a sub-lessee and all licensees of the lessee or sub-lessee, irrespective of whether they are business visitors or gratuitous licensees. It excludes persons who are privileged to enter the land, irrespective of the lessee's consent, for the protection of their own interests or the interest of the public."

It is contended that the City of Tyler was using the park in a proprietary capacity when it let the Texas Rose Festival Association hold its pageant at the time Mrs. Ingram was injured, and that the City is liable for such injuries. The cases of Scroggins v. City of Harlingen, supra, and City of Waco v. Branch et al, supra, are cited in support of this contention. The case of Scroggins v. City of Harlingen, supra, is clearly distinguishable from this case. The City of Harlingen was operating under the Home Rule Statutes, and its charter authorized the operation of a carnival for the purpose of advertising the City as well as the surrounding country. That case also shows that those who operated the carnival did so with the co-operation of the City government, and that the City received part of the revenue derived from the admission fees. Under the facts of that case, it was held that the City owed a duty to exercise ordinary care to see that such devices as were used on the grounds were not defective. No such facts exist in this case. The facts in the case of City of Waco v. Branch et al, supra, disclose that an employee of the City negligently herded a flock of sheep belonging to the City, thereby causing injuries to a person driving an automobile in the City's park. It was held that the City was liable for such injuries. We

think the facts in that case and those in this one are clearly distinguishable.

It is not contended that the City charter made the Texas Rose Festival Association a part of the City government. Nor is it contended that the City made a contract with the Association to erect bleachers or to be responsible for their use. While the City permitted the Association to use part of the park for its Rose Festival, and·such Association built thereon defective bleachers and charged an admission fee, and one of the officers of the City inspected such bleachers in the manner above stated, such facts, when considered in connection with the undisputed evidence, do not make the City liable for the injuries sustained by respondent. See Morton et al v. Burton Lingo Lumber Co., 136 Texas 263, 150 S. W. (2d) 239; Christopher v. City of El Paso (Civ. App.), 98 S. W. (2d) 394 (writ dismissed) ; City of Menard v. Coats (Civ. App.), 60 S. W. (2d) 831; Jackson v. Amador (Civ. App.), 75 S. W. (2d) 892 (writ dismissed) ; Harris v. Lewistown Trust Co., 326 Pa. 145, 191 Atl. 34, 110 A. L. R. 749.

We have carefully considered the entire record in this case, and are unable to find any sound basis upon which to sustain the judgment obtained by respondent. There is not an issue of fact presented, and the case presents only a question of law. The trial court should have rendered judgment for petitioner.

In view of the conclusions reached herein, it is unnecessary to discuss any of the other questions presented in the record.

The judgments of the trial court and of the Court of Civil Appeals are reversed, and judgment is here rendered in favor of the City of Tyler.

Opinion delivered July 22, 1942.

Rehearing overruled October 7, 1942.